SYDNEY J. HALL, ESQ.
LAW OFFICES OF SYDNEY J. HALL
1308 Bayshore Highway, Suite 220
Burlingame, California 94010
Telephone: (650) 342-1830
Facsimile: (650) 342-6344
Email: sydneyhalllawoffice@yahoo.com

REGINALD TERRELL
THE TERRELL LAW GROUP
P. O. BOX 13315, PMB #148
Oakland, CA 94661
Telephone: (510) 237-9700
Facsimile: (510) 237-4616
Email: reggiet2@aol.com

*Counsel for Plaintiffs and the Proposed Classes*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AYANNA NOBLES and JULIA HUGHES, individually and on Behalf of All Others Similarly Situated, | Case No. **C13-5017** |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| V. | DEMAND FOR JURY TRIAL |
| COCO-COLA REFRESHMENTS USA, INC., and THE COCO-COLA COMPANY, | |
| Defendants. | |

## SUMMARY OF THE CASE

1. The Coca-Cola Company is one of the world's largest beverage companies.

2. Defendant Coco Cola receive most if not all of its revenue from the sale of containers of Coca-Cola.

3. Containers of Coca-Cola, however, fail to state that they contain artificial flavoring and/or chemical preservatives.

4. Instead most containers of Coca-Cola state that they contain no artificial flavoring and/or chemical preservatives.

5. Such false statements and omissions violate federal and California state laws and render these products legally misbranded and illegal to manufacture, distribute or sell to consumers.

6. Defendants are well aware of consumer health concerns yet they knowingly and intentionally engage in such unlawful conduct to deceive consumers and maximize profits.

7. Plaintiffs, individually and on behalf of other consumers who purchased Coca-Cola, now bring this action, not only to recover damages, but to stop Defendants from continuing to engage in such unlawful actions and from continuing to deceive consumers.

8. Federal and California laws regulate label contents on packaged food. The federal Food, Drug & Cosmetic Act ("FDCA") and regulations promulgated thereunder prohibits food manufacturers and distributors like Defendants from selling misbranded products with labels that inaccurately disclose the contents of a product.

9. The FDCA and regulations promulgated thereunder are expressly adopted in California's Sherman Food Drug & Cosmetic Law (the "Sherman Law"). See California Health & Safety Code § 109875, et seq.

10. Under federal and California state laws, products such as Coca-Cola are "misbranded" if their "labeling is false or misleading in any particular," and or if it does not contain specific information in it's labeling. See 21 U.S.C. § 343(a); California Health & Safety Code § 110660.

11. Violation of the Sherman Law also constitutes a violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq. ("UCL"); Cal. Bus. Prof. Code §17500, et seq. and California's Consumers Legal Remedies Act, Cal. Civ. Code §1750, et seq. ("CLRA").

12. Under the FDCA and the Sherman Law, Defendants must disclose that a product ingredient is being used as an artificial flavoring and or as a chemical preservative.

13. Coca-Cola contains phosphoric acid, an artificial, man-made chemical that Defendants use for flavoring and as a preservative.

14. Defendants knowingly and intentionally fail to disclose on their Coca-Cola containers that phosphoric acid is used in Coca-Cola as either an artificial flavoring and or as a chemical preservative.

15. On 2-liter bottles, 24-packs of 12 ounce cans and 12-packs of 12 ounce cans of Coco-Cola purchased by Plaintiffs, Defendants knowingly and intentionally falsely state the opposite.

16. For all these reasons, all containers of Coca-Cola sold in the United State are being illegal labeled and sold.

17. Plaintiffs now seek to stop Defendants' unlawful conduct.

## PARTIES

18. Plaintiff Ayanna Nobles is a resident of Alameda County, California.

19. Plaintiff Julia Hughes is a resident of Contra Costa County, California.

20. Both Plaintiffs purchased more than $30.00 worth of Coca-Cola in the San Francisco Bay Area within the four years preceding the filing of this action (the "class period").

21. Upon information and belief, Defendant The Coca-Cola Company is a Delaware Corporation, with its principal place of business at One Coca-Cola Plaza, Atlanta, Georgia.

22. Defendant Coca-Cola Refreshments USA, Inc. is a Delaware corporation with its principal place of business at One Coca-Cola Plaza, Atlanta, Georgia.

## JURISDICTION AND VENUE

23. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §1332(d) because this is a class action in which: (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; (2) a member of the class of plaintiffs is a citizen of a State different from a defendant; and (3) the number of members of all proposed plaintiff classes in the aggregate is greater than 100.

24. The Court has personal jurisdiction over Defendants because a substantial portion of the wrongdoing alleged herein occurred in California. Defendants also has sufficient minimum contacts with California and has otherwise intentionally availed itself of the markets in California through the promotion, marketing and sale of products sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

25. Venue is proper in this District pursuant to 28 U.S.C. §139J (b) (2) and (3) because a substantial part of the events and or omissions giving rise to these claims occurred in this

District, a substantial part of the property that is the subject of this action is situated in this

District and Defendants are subject to the Court's personal jurisdiction with respect to this action.

## COMMON RELEVANT FACTS

### Coca-Cola products are misbranded and illegally sold

26. All containers of Coca-Cola sold in the United States are labeled and illegal.

27. Their sale constitutes violations of both the FDCA and the Sherman Law.

28. Defendants knowingly and intentionally sold these misbranded products to consumers (including Plaintiffs) with the intent to deceive.

29. Plaintiffs purchased Coca-Cola within the class period.

30. Plaintiff Ayanna Nobles purchased Coca-Cola in 2 liter bottles. Plaintiff Julia Hughes purchased Coca-Cola in 24-packs of 12 ounce cans and 12-packs of 12 ounce cans.

31. Containers of Coca-Cola do not state that any Coca-Cola ingredients are used as artificial flavoring or as a chemical preservative.

32. Labels on 2 liter bottles, 24-packs of 12 ounce cans and 12-packs of 12 ounce cans of Coca-Cola state, no artificial flavors or preservatives.

33. The ingredients in Coca-Cola include but are not limited to phosphoric acid.

34. Coca-Cola's own website states: "Phosphoric acid is used in certain soft drinks, including Coca-Cola, to add tartness to the beverage. Phosphoric acid contains phosphorus, one of the basic elements of nature and an essential nutrient. Phosphorus is a major component of bones."

35. Coca-Cola's website also discusses acidulants and states acidulants are "Acids, which include phosphoric acid and citric acid and acidic salts help to provide flavoring. They are

responsible for the tart taste which helps to balance the sweetness. They also help to reduce the growth of micro-organisms which (i.e., protect the food from spoiling)."

36. Although Coca-Cola's website notes that "[p]hosphorus is a major component of bones," phosphoric acid and phosphorus are two different things.

37. The phosphoric acid added to Coca-Cola is man-made and is used as an artificial flavoring and as a chemical preservative.

38. The term artificial flavor or artificial flavoring is defined in 21 C.F.R. §101.22(a) (1) as follows: "............. any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof.

39. The function of phosphoric acid in Coca-Cola, in part, is to impart flavor and as a chemical preservative.  It is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof.

40. The term natural flavor or natural flavoring is defined in 21 C.F.R. §101.22(a) (3) as follows: "............. the essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product 1froasting, heating or enzymolysis, which contains the flavoring constituents derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, seafood, poultry, eggs, dairy products, or fermentation products thereof, whose significant function in food is flavoring rather than nutritional.

41. A significant function of phosphoric acid in Coca-Cola is flavoring rather than nutritional.

42. Phosphoric acid is not an essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, seafood, poultry, eggs, dairy products, or fermentation products thereof.

43. The term chemical preservative is defined in 21 C.F.R. §101 .22(a) (5) as follows: "............ any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties."

44. As used in Coca-Cola, phosphoric acid tends to prevent or retard deterioration thereof.

45. Phosphoric acid is not a common salt, sugar, vinegar, spice, or oil extracted from spices, nor is it a substance added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties.

46. "A statement of artificial flavoring, artificial coloring or chemical preservative shall be placed on the food or on its container or wrapper, or on my two or all three of these, as may be necessary to render such statement likely to be read by the ordinary person under customary conditions of purchase and use of such food." 21 C.F.R. §101 .22(c).

47. Containers of Coca-Cola do not contain a statement that they contain:

i. Artificial favoring and or;

ii. Chemical preservatives.

48. California's Sherman Law adopts 21 C.F.R. § 101.22, including those set forth above, and its subparts.

49. Because Coca-Cola containers do not contain statements that they contain artificial flavoring and or chemical preservatives, they are misbranded under both the FDCA and the Sherman Law.

50. Certain Coca-Cola containers also contain the affirmative statement that there are "no artificial flavors, no preservatives added."

51. This statement is false.

52. Because Coca-Cola's containers falsely represent they contain no artificial flavors and or preservatives, they are misbranded under both the FDCA and the Sherman Law.

53. Defendants knowingly and intentionally failed to include statements on containers of Coca-Coca regarding the presence of artificial flavoring and or chemical preservatives; despite the fact Coca-Cola contains artificial flavoring and or chemical preservatives.

54. Defendants knowingly and intentionally falsely stated Coca-Cola has no artificial flavors and no preservatives despite the fact Coca-Cola contain artificial flavoring and chemical preservatives.

55. Had Plaintiffs known Coca-Cola was misbranded, contained artificially flavoring, illegally sold product and or contained chemical preservatives, they would not have purchased Coca-Cola.

56. Plaintiffs' reliance was reasonable.

57. A reasonable consumer would have been misled by the Defendants' actions.

**Defendants Have Violated California Law**

58. With respect to each of the aforementioned misbranded Coca-Cola products, defendants have violated the FDCA and regulations promulgated thereunder.

59. As a result, Defendants have violated the following provisions of the Sherman Law:

i. California Health & Safety Code §110740 because their Coco-Cola products contain artificial flavoring, coloring and or chemical preservative without labeling stating such;

ii. California Health & Safety Code §110705 because words, statements and or other information required to appear on the label and or labeling are not prominently placed upon the label and or labeling with conspicuousness, as compared with other words, statements, designs and or devices in the labeling and in terms to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use;

iii. California Health & Safety Code §110390 prohibition concerning disseminating false and or misleading food advertisements include statements on products and product packaging, labeling and or any other medium used to directly and or indirectly induce the purchase of a food product;

iv. California Health & Safety Code §110395 prohibition concerning the manufacture, sell, deliver, hold and or offer to sell any falsely advertised food;

v. California Health & Safety Code §§110398 and 110400 prohibition concerning advertising of misbranded food and or to deliver or proffer for delivery any food that has been falsely advertised;

vi. California Health & Safety Code §110760 prohibition for any person to manufacture, sell, deliver, hold or offer for sale any misbranded food;

vii. California Health & Safety Code §110765 prohibition for any person to misbrand any food;

viii. California Health & Safety Code §110770 prohibition for any person to receive in commerce any food that is misbranded or to deliver and or proffer any such food for delivery;

ix. California Health & Safety Code §110660 because their labeling is false and misleading in one or more way(s);

x. California Health & Safety Code §110665 because their labeling fails to conform to the requirements for nutrient labeling set forth in 21 U.S.C. § 343(q) and the regulations promulgated thereunder and;

xi. California Health & Safety Code §110670 because their labeling fails to conform to the requirements for nutrient content and health claims set forth in 21 U.S.C. §343(r) and the regulations promulgated thereunder.

**Purchasers of Misbranded Coca-Cola Have Been Injured**

60.  Plaintiffs read and reasonably relied on the labels as described herein when buying Coca-Cola.

61.  Plaintiffs relied on Defendants' labeling and based and justified the decision to purchase Coca-Cola, in substantial part, on these labels.

62.  At point of sale, Plaintiffs did not know and had no reason to know Coca-Cola contained artificial flavoring, coloring, chemical preservatives and or that it was unlawful and or misbranded.

63. Had Plaintiffs been aware of these material facts, they would not have bought Coca-Cola.

64. As a result of Defendants' unlawful misrepresentations, Plaintiffs and millions of class members in California and throughout the United States purchased Coca-Cola.

65. Defendants' labeling as alleged herein is false and misleading and was designed to increase sales of the Coca-Cola.

66. Defendants' misrepresentations are part of its systematic labeling practice.

67. A reasonable person would attach importance to Defendants' misrepresentations in determining whether to purchase Coca-Cola.

68. Plaintiffs' and class members' purchases of Coca-Cola damaged them because misbranded products are illegal, they had cheaper alternatives available and finally, they paid an unwarranted premium for Coca-Cola.

## CLASS ACTION ALLEGATIONS

69. Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(b) (2) and 23(b) (3) on behalf of the following class:

All persons nationwide who, within the class period, purchased Coca- Cola (the "class").

Alternatively, Plaintiff brings this action on behalf of the following class: All persons in California who, within the class period, purchased Coca- Cola.

70. The following persons are expressly excluded from the class: (1) Defendants and their subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from

the proposed class; (3) governmental entities; and (4) the Court to which this case is assigned and its staff.

71. This action can be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

72. **Numerosity**: Based upon Defendants' publicly available Coco-Cola sales data, it is estimated the national class numbers is potentially in the millions and that joinder of all class members is impracticable.

73. **Common Questions Predominate**: This action involves common questions of law and fact applicable to each class member that predominate over questions that affect only individual class members. Thus, proof of a common set of facts will establish the right of each class member to recover. Questions of law and fact common to each class member include, but are not limited to the following:

(a) Whether Defendants engaged in unfair, unlawful or deceptive business practices by failing to properly package and label Coca-Cola sold to consumers;

(b) Whether the food products at issue were misbranded and labeled as a matter of law;

(c) Whether Defendants made unlawful and misleading claims regarding flavoring and preservatives in Coca-Cola;

(d) Whether Defendant violated California Bus. & Prof. Code §17200 et seq., California Bus. & Prof, Code § 17500 et seq., the Consumer Legal Remedies Act, Cal. Civ. Code. § 1750 et seq., the Sherman Law; or the FDCA and regulations promulgated thereunder;

(e) Whether Plaintiffs and the class are entitled to equitable and or injunctive relief;

(f) Whether Defendants' unlawful, unfair and or deceptive practices harmed Plaintiffs and the class; and

(g) Whether Defendants were unjustly enriched by their deceptive practices.

74. **Typicality**: Plaintiffs' claims are typical of the claims of the class because Plaintiffs bought Defendants' Coco-Cola during the class period. Defendants' unlawful, unfair and fraudulent actions concern the same business practices described herein irrespective of where they occurred and or were experienced. The injuries of each class member were caused directly by Defendants' wrongful conduct. Additionally, the factual underpinning of Defendants' misconduct is common to all class members and represents a common thread of misconduct resulting in injury to the class. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the class members and are based on the same legal theories.

75. **Adequacy**: Plaintiffs will fairly and adequately protect the interests of the class. Neither Plaintiffs nor their counsel have any interests that conflict with and or are antagonistic to the interests of the class members. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and those of the class members. Plaintiffs and Plaintiffs' counsel have the necessary resources to adequately and vigorously litigate this class action and Plaintiffs and their counsel are aware of their fiduciary responsibilities to the class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the class.

76. **Superiority**: There is no plain, speedy or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by class members will

tend to establish inconsistent standards of conduct for Defendants and result in the impairment of class members' rights and the disposition of their interests through actions to which they are not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense that numerous individual actions would create. Further, as the damages suffered by individual class members may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual class members to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the Court and the litigants and will promote consistency md efficiency of adjudication.

77.     The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate injunctive or equitable relief with respect to the class as a whole.

78.     The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are met as questions of law or fact common to class members predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

79. Plaintiffs and Plaintiffs' counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class

action.

80. Plaintiffs are class members they seek to represent. Plaintiffs' claims are typical of the class members' claims. Plaintiffs will fairly and adequately protect the interests of e class in that Plaintiffs' claims are typical and representative of the class.

82. There are no unique defenses which may be asserted against Plaintiffs individually, as distinguished from the class. The claims of Plaintiffs are the same as those of the class.

83. No conflicts of interest exist between Plaintiffs and the other class members. Plaintiff has retained counsel that is competent and experienced in complex class action litigation. Plaintiffs and their counsel will fairly and adequately represent and protect the interests of the class.

84. This class action is superior to any other method for the fair and efficient adjudication of this dispute.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Business and Professions Code §17200, et seq.
### Unlawful Business Acts and Practices

85. Plaintiffs repeat and re-allege each of the above allegations as if fully set forth herein.

86. Defendants' conduct constitutes unlawful business acts and practices.

87. Defendants sold Coca-Cola in California and throughout the United States during the class period.

88. Defendants are corporations and, therefore, are "persons" within the meaning of the Sherman Law.

89.  Defendants' business practices are unlawful under § 17200, et seq. by virtue of Defendants' violations of the advertising provisions of Article 3 of the Sherman Law and the misbranded food provisions of Article 6 of the Sherman Law.

90.  Defendants' business practices are unlawful under § 17200, et seq. by virtue of defendants' violations of § 17500, et seq., which forbids untrue and misleading advertising.

91.  Defendants' business practices are unlawful under § 17200, et seq. by virtue of defendants' violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq.

92.  Defendants sold to Plaintiffs and the class products that were not capable of being sold legally and which have no economic value.

93.  Plaintiffs and the class paid a premium price for these products.

94.  Defendants' unlawful business acts present a threat and reasonable continued likelihood of injury to Plaintiffs and the class.

95.  As a result of Defendants' illegal business practices, Plaintiffs and the class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and to restore to any class member any money paid for Coca-Cola.

### SECOND CAUSE OF ACTION
**Business and Professions Code § 17200, et seq,**
**Unfair Business Acts and Practices**

96.  Plaintiffs repeat and re-allege each of the above allegations as if fully set forth herein.

97.  Defendants' conduct as set forth herein constitutes unfair business acts and practices.

98.  Plaintiffs and class members suffered a substantial injury by virtue of buying Coca-Cola that they would not have purchased absent Defendant's illegal conduct.

99.  Defendants' deceptive marketing, advertising, packaging and labeling of Coca-Cola and their sale of unsalable misbranded products was of no benefit to consumers and the harm to consumers and competition is substantial.

100.  Defendants sold to Plaintiffs and class members products not capable of being legally sold and that have no economic value.

101.  Plaintiffs and the class members paid a premium price for Coca-Cola.

102.  Plaintiffs and the class members who purchased Coca-Cola had no way of reasonably knowing the products were misbranded and were not properly marketed, advertised, packaged and labeled and thus could not have reasonably avoided the injury each of them suffered.

103.  The consequences of Defendants' conduct as set forth herein outweigh any justification, motive or reason therefor.

104.  Defendants' conduct is and continues to be immoral, unethical, unscrupulous, contrary to public policy and is substantially injurious to Plaintiffs and the class.

105.  As a result of Defendants' conduct, Plaintiff and the class, pursuant to Business and Professions Code §17203, are entitled to an order enjoining such future conduct by Defendants and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Coca-Cola by Plaintiffs and the class.

### THIRD CAUSE OF ACTION
#### Business and Professions Code § 17200, et seq.
#### Fraudulent Business Acts and Practices

106. Plaintiffs repeat and re-allege each of the above allegations as if fully set forth herein.

107. Defendants' conduct as set forth herein constitutes fraudulent business practices Pursuant to California Business and Professions Code § 17200, et seq.

108. Defendants' misleading marketing, advertising, packaging and labeling of Coca-Cola were likely to deceive reasonable consumers.

109. Plaintiffs and class members were deceived.

110. Defendants have engaged in fraudulent business acts and practices.

111. Defendants' fraud and deception caused Plaintiffs and the class to purchase Coca-Cola that they would otherwise not have purchased had they known the true nature of these products.

112. As a result of Defendant's conduct as set forth herein, Plaintiffs and the class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future induct by Defendants and such other orders and judgments which may be necessary to disgorge defendants' ill-gotten gains and restore any money paid for Coca-Cola by Plaintiffs and the class.

### FOURTH CAUSE OF ACTION
### Business and Professions Code § 17500, et seq.
### Misleading and Deceptive Advertising

113. Plaintiffs repeat and re-allege each of the above allegations as if fully set forth herein.

114. Plaintiffs asserts this cause of action for violations of California Business and Professions Code § 17500, et seq. for misleading and deceptive advertising against Defendants.

115. Defendants engaged in a scheme of offering Coca-Cola for sale to Plaintiffs and class members by way of, inter alia, product packaging and labeling and other promotional materials.

116. These materials misrepresented and/or omitted the true contents and nature of Coca-Cola.

117. Defendants' advertisements and inducements were made within California and throughout the United States and come within the definition of advertising as contained in Business and Professions Code §17500, et seq. in that such product packaging, labeling and promotional materials were intended as inducements to purchase Coca-Cola and are statements disseminated by Defendants to Plaintiffs and the class that were intended to reach members of the class.

118. Defendants knew, or in the exercise of reasonable care, should have known, that 1ese statements were misleading and deceptive as set forth herein.

119. In furtherance of its plan and scheme, Defendants prepared and distributed within California and nationwide via product packaging and labeling and other promotional materials, statements that misleadingly and deceptively represented the composition and the nature of Coca-Cola.

120. Plaintiffs and the class necessarily and reasonably relied on Defendants' materials, and were the intended targets of such representations.

121. Defendants' conduct in disseminating misleading and deceptive statements in California and nationwide to Plaintiffs and the class was and is likely to deceive reasonable

consumers by obscuring the true composition and nature of Coca-Cola in violation of the misleading prong" of California Business and Professions Code § 17500, et seq.

122. As a result of Defendants' violations of the "misleading prong" of California Business and Professions Code § 17500, et seq., Defendants have been unjustly enriched at the expense of Plaintiffs and the class.

123. Plaintiffs and the class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendants and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money aid for Coca-Cola by Plaintiffs and the class.

## FIFTH CAUSE OF ACTION
### Business and Professions Code § 17500, et seq.
### Untrue Advertising

124. Plaintiffs repeat and re-allege each of the above allegations as if fully set forth herein.

125. Plaintiffs assert this cause of action against Defendants for violations of California Business and Professions Code § 17500, et seq., regarding untrue advertising.

126. Defendants engaged in a scheme of offering Coca-Cola for sale to Plaintiffs and the class by way of product packaging and labeling and other promotional materials.

127. These materials misrepresented or omitted the true contents and nature of Coca-Defendants' advertisements and inducements were made in California and throughout the United States and come within the definition of advertising contained in Business md Professions Code §17500, et seq. where the product packaging, labeling and promotional materials were intended

as inducements to purchase Coca-Cola and are statements disseminated by Defendants to Plaintiffs and the class.

128. Defendants knew, or in the exercise of reasonable care, should have known, these statements were untrue.

129. In furtherance of its plan and scheme, Defendants prepared and distributed in California and nationwide via product packaging and labeling and other promotional materials, statements that falsely advertise the composition of Coca-Cola and falsely misrepresented the nature of Coca-Cola.

130. Purchasers like Plaintiffs and the class was the intended targets of such representations and would reasonably be deceived by Defendants' materials.

131. Defendants' conduct in disseminating untrue advertising throughout the United States and California deceived Plaintiffs and class members by obfuscating the contents, nature and quality of Coca-Cola in violation of the "untrue prong" of California Business and Professions Code §17500.

132. As a result of Defendants' violations of the "untrue prong" of California Business and Professions Code § 17500, et seq., Defendants have been unjustly enriched at the expense of plaintiffs and the class.

133. Plaintiffs and the class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendants and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money aid for Coca-Cola by Plaintiffs and the class.

## SIXTH CAUSE OF ACTION

**Consumer Legal Remedies Act. Cal. Civ. Code §1750, et seq.**

134. Plaintiffs repeat and re-allege each of the above allegations as if fully set forth

125. This cause of action is brought pursuant to the CLRA. This cause of action does not currently seek monetary relief and is limited to injunctive relief.

136. Plaintiffs intend to amend this Complaint to seek monetary relief in accordance with the CLRA after providing Defendants with notice pursuant to Cal. Civ. Code § 1782.

137. At the time of any amendment seeking damages under the CLRA, Plaintiffs will demonstrate that the violations of the CLRA by Defendants were willful, oppressive and fraudulent, thus supporting an award of punitive damages.

138. Consequently Plaintiffs and the class will be entitled to actual and punitive damages against Defendants for its violations of the CLRA.

139. Additionally, pursuant to Cal. Civ. Code §l 782(a)(2), Plaintiffs and the class will be entitled to an order enjoining the above-described acts and practices, providing restitution to Plaintiffs and the class, ordering payment of costs and attorneys' fees and any other relief deemed appropriate and proper by the Court pursuant to Cal. Civ. Code § 1780.

140. Defendants' actions, representations and conduct have violated and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of goods or services to consumers.

141. Defendants sold Coca-Cola in California and nationwide during the class period.

142. Plaintiffs and class members are "consumers" as that term is defined by the CLRA in Cal. Civ. Code §1761(d).

143. Coca-Cola products are "goods" within the meaning of Cal. Civ. Code §1761(a).

144. By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1 770(a)(5), of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the particular ingredients, characteristics, uses, benefits and quantities of the goods.

145. By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a) (7) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that it misrepresents the particular standard, quality or grade of the goods.

146. By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1 770(a)(9) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that it advertises goods with the intent not to sell the goods as advertised.

147. By engaging in the conduct set forth herein, Defendants have violated and continue to violate Section 1770(a) (16) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices.

148. Plaintiffs request the Court enjoin Defendants from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1 780(a) (2).

149. If Defendants are not restrained from engaging in these practices in the future, Plaintiff and the class will continue to suffer harm.

### SEVENTH CAUSE OF ACTION
**Restitution Based on Unjust Enrichment/Quasi-Contract**

150. Plaintiffs repeat and re-allege each of the above allegations as if fully set forth herein.

151. As a result of Defendants' fraudulent and misleading labeling, advertising, marketing and sales of Coca-Cola, Defendants were enriched at the expense of Plaintiffs and the class.

152. Defendants sold Coca-Cola to Plaintiffs and the class that was not capable of being sold and had no economic value.

153. It would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits it received from Plaintiffs and the class in light of the fact that the products were not what Defendants purported them to be.

154. Thus, it would be unjust and inequitable for Defendants to retain the benefit without restitution to Plaintiffs and the class of all monies paid to Defendants for the products at issue.

155. As a direct and proximate result of Defendants' actions, Plaintiffs and the class have suffered damages in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all other similarly situated persons, pray for judgment against Defendants as follows:

a. For an order certifying this case as a class action and appointing Plaintiffs and their counsel to represent the class;

b. For an order awarding, as appropriate, damages, restitution and/or disgorgement to Plaintiffs and the class;

c. For an order requiring Defendants to immediately cease and desist from selling Coca-

Cola in violation of law; enjoining Defendants from continuing to market, advertise, distribute and sell Coca-Cola in the unlawful manner described herein; and ordering Defendants to engage in corrective action;

d. For all equitable remedies available pursuant to Cal. Civ. Code §1780;

e. For an order awarding attorneys' fees and costs;

f. For an order awarding punitive damages;

g. For an order awarding pre-judgment and post-judgment interest; and

h. For such other and further relief deemed just and appropriate by the court.

## XII. DEMAND FOR JURY TRIAL

Plaintiffs on behalf of themselves and all others similarly situated hereby request a jury trial on any and all claims so triable.

Respectfully submitted,

Dated: October 28, 2013

LAW OFFICES OF SYDNEY J. HALL
THE TERRELL LAW GROUP

REGINALD TERRELL, ESQ.

REGINALD TERRELL, ESQ.
THE TERRELL LAW GROUP
Post Office Box 13315, PMB #148
Oakland, California 94661
Telephone: (510) 237-9700
Facsimile: (510) 237-4616

SYDNEY J. HALL, ESQ.
LAW OFFICES OF SYDNEY J. HALL
1308 Bayshore Highway, Suite 220
Burlingame, California 94010
Telephone: (650) 342-1830
Facsimile: (650) 342-6344

CLASS ACTION COMPLAINT

26